UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:

ROBERT KIRKLIN,
An Individual

Plaintiff,

v.

ARTISTIC HOSPITALITY AND
RESORTS CONSTRUCTION, INC,
A Florida Profit Corporation

Defendant.
_______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Robert Kirklin, ("Mr. Kirklin" or "Plaintiff") files this Complaint against Defendant, Artistic General Contracting, ("AHGC" or "Defendant"), and states as follows:

## JURISDICTION AND VENUE

1. This action arises out of Defendant's failure to provide continuing health insurance coverage, as well as lawful notice of the right to same, to Mr. Kirklin in violation of the Employee Retirement Income Security Act of 1974, codified as part of 29 U.S.C. § 1001, *et seq.* ("ERISA") as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), for retaliation and unlawful

constructive discharge under Florida's Private Whistleblower Act ("FWA") at Fla. Stat. § 448.102(3), and for violation of Florida's workers' compensation retaliation statute ("WCR") at Fla. Stat. § 440.205.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1131, as this action arises under the laws of the United States, specifically, ERISA and COBRA.

3. This Court has supplemental jurisdiction over Plaintiff's WCR and FWA claims as they arise from the same facts and circumstances as his ERISA and COBRA claims.

4. At all times relevant hereto, Plaintiff was an employee of Defendant.

5. Plaintiff worked for Defendant in Hillsborough County, Florida, and this venue is therefore proper.

6. Defendant is a Florida Profit Corporation that is located and does business in, among others, Hillsborough County, Florida, and is therefore within the jurisdiction of the Court.

7. At all times material hereto, Defendant employed ten (10) or more persons, qualifying it as an "employer" under the FWA.

## <u>FACTUAL ALLEGATIONS</u>

8. Mr. Kirklin worked for AHRC as Field Construction Manager, from August 20, 2025, until his unlawful and retaliatory constructive discharge on January 26, 2026.

9. During his tenure, Mr. Kirklin was an excellent employee, and had no history of attendance, tardiness, or disciplinary issues.

10. When AHRC hired Mr. Kirklin on to perform Construction Management duties for a property in St. Pete Beach, FL, for the company, Plaintiff was under the impression that AHRC was a General Contractor licensed in the State of Florida pursuant to Fla. Stat. § 489.105 *et seq*.

11. Furthermore, AHRC Owner, Jason Welling and Manager, Adam Anderson ("Mr. Anderson") failed to properly display their license number in emails, advertisements, business cards, vehicles, or websites pursuant to Fla. Stat. § 489.119 *et seq*.

12. To make matters worse, AHRC also unlawfully recorded Mr. Kirklin with a surreptitious office camera – something that Mr. Kirklin did not consent to and is thus a violation of Florida's two-party consent recording laws in areas with a reasonable expectation of privacy. *See* Fla. Stat. § 934.03(2)(d).

13. On September 3, 2025, Mr. Kirklin began to physically work at the St. Pete Beach job site.

14. Immediately upon entering the building, Mr. Kirklin could detect the powerful smell of mold and dampness.

15. On September 11, 2025, the previous contractor hired work on the St. Pete Beach site before Mr. Kirklin advised Plaintiff that the building was contaminated with asbestos.

16. Immediately, Mr. Kirklin contacted AHRC's Project Manager, Cumming Group Representative, Stefano D. Ignazi ("Mr. Ignazi"), objected to this unlawful work conditions, and asked if Mr. Ignazi knew of any asbestos issue with the building.

17. AHRC's failure to ensure that its workplace is safe from asbestos is unlawful under Fla. Stat. § 469.001 *et seq*, 29 C.F.R. 1910.1001 *et seq*., and also runs afoul of OSHA's General Duty Clause, which requires workplaces to be free from hazards which cause death or serious bodily injury to its employees. *See* 29 U.S.C. § 654(a).

18. As such Mr. Kirklin's objections to these violations of the law are considered "protected activity" under the FWA.

19. Mr. Ignazi denied any knowledge of asbestos in the building but stated that he would investigate the issue.

20. AHRC allowed its employees to work in a dangerous, asbestos-filled building until September 17, 2025, days after Mr. Ignazi confirmed that there was indeed asbestos in the workplace which reached unlawful levels and could cause harm to anyone in the building.

21. Despite this, neither Mr. Anderson nor Mr. Distefano began the process of a professional inspection as required by the law, and simply left Mr. Kirklin to work in a dangerous, asbestos-infested worksite.

22. On September 18, 2025, Mr. Kirklin informed Mr. Anderson that he was beginning to feel negative respiratory symptoms which he believed was due to working at the St. Pete Beach jobsite.

23. Having not been employed long enough to obtain health insurance at his workplace, Mr. Kirklin inquired about any aid AHRC could provide in this matter, but Mr. Anderson failed to provide Plaintiff with any worker's compensation paperwork.

24. Instead, Mr. Anderson grew irate and ordered Mr. Kirklin to go to an urgent care center, as he did not believe Mr. Kirklin was suffering from any symptoms derived from his unhealthy and unlawful work environment.

25. The next day, Mr. Kirklin visited urgent care and was treated for a respiratory infection caused by mold and/or other airborne pathogens from his job site.

26. When Mr. Kirklin advised Mr. Anderson of this fact, Mr. Anderson responded by ordering Plaintiff to work from an office away from the jobsite, while hiring another Field Construction Manager to work onsite – and presumably failed to inform them of the dangerous condition of the building.

27. AHRC prevented Mr. Kirklin from working on-site until November 3, 2025, when he resumed his on-site duties.

28. Unfortunately, Mr. Kirklin continued to exhibit symptoms due to the airborne pathogens present at the jobsite, which Plaintiff objected to once again.

29. Once again, Mr. Anderson and AHRC upper management failed to remedy the unlawful work environment and failed to provide Mr. Kirklin with any sort of worker's compensation guidance or paperwork.

30. On the other hand, Mr. Anderson began retaliating against Mr. Kirklin for his objections and insulted him by claiming that he was not "doing shit" for the company, and called Plaintiff his, "bitch."

31. Needless to say, Mr. Anderson's behavior is patently retaliatory, and unlawful under the FWA and WCR.

32. On December 31, 2025, Mr. Kirklin was forced to seek medical treatment yet again and advised Mr. Anderson of same, though the latter was still out on holiday break.

33. When Mr. Anderson returned on January 5, 2026, he failed to take any remedial actions and instead plagued Mr. Kirklin with personal anecdotes regarding his recent vasectomy procedures, along with crude gesturing towards his genitals.

34. Because of AHRC's repeated failure to provide a safe working environment, on January 22, 2026, Mr. Kirklin felt ill once again while at work and advised Mr. Anderson that he needed to seek medical attention.

35. Hearing this, Mr. Anderson grew irate and informed Mr. Kirklin that he did not believe Plaintiff was ill.

36. Nevertheless, Mr. Kirklin sought medical attention and was cleared to return to work on January 26, 2026.

37. At this point, Mr. Kirklin renewed his objections to his unlawful work environment and informed Mr. Anderson that he would be utilizing a face mask while at work in order to curb at least some of the harmful airborne pathogens present at the jobsite.

38. Despite having been cleared by a doctor to return to work, Mr. Anderson informed Mr. Kirklin that he was not to work until he was "completely healed" and forced him to take Paid Time Off.

39. After several weeks of objecting to unlawful workplace activity, suffering negative health effects, and retaliation from his employers, and now, being unable to work, Mr. Kirklin was left with no other choice but to resign his employment effective January 26, 2026.

40. When faced with the possibility of permanent health damage, coupled with relentless retaliation by AHRC upper management, any reasonable employee

in Mr. Kirklin's position would have done the same, thus establishing Mr. Kirklin's separation as an unlawful constructive discharge under the law.

41. As to his FWA Claims, Plaintiff's objections and refusals were considered protected activity pursuant to Fla. Stat. § 448.102, and qualified Mr. Kirklin as a whistleblower under the law.

42. Plaintiff was constructively discharged in direct retaliation for reporting and objecting to Defendants' unlawful actions, in violation of Section 448.102, Florida Statutes.

43. Plaintiff was also constructively discharged for reporting an on-the-job injury and for his need to avail himself of worker's compensation, which was denied by Defendant.

44. Defendant's constructive discharge of Plaintiff's employment on January 26, 2026, was a "qualifying event" as defined by COBRA. *See* 29 U.S.C. § 1163(2).

45. Despite the occurrence of this qualifying event, Defendant failed to timely provide Plaintiff with the notice of his right to continuing health care coverage under the Plan, as required by COBRA.

46. Pursuant to COBRA, Defendant was required to notify its plan administrator of the subject qualifying event within thirty (30) days of its occurrence, and thereafter, the plan administrator was required to notify Plaintiff of his right to

elect continuing health care coverage under the Plan within fourteen (14) days. See 29 U.S.C. § 1166(a)(2)-(4) and (c).

47. Accordingly, as the qualifying event at issue occurred on January 26, 2026, Plaintiff should have been notified of his COBRA rights no later than March 11, 2026.

48. To this date, Plaintiff has not received this notification.

49. As a result, Plaintiff has incurred the cost of significant medical bills as well as additional damages and penalties.

50. Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent him in the litigation and has agreed to pay the firm a reasonable fee for its services.

**COUNT I**
**FAILURE TO PROVIDE NOTICE OF "QUALIFYING EVENT" IN VIOLATION OF COBRA AGAINST DEFENDANT**

51. Plaintiff restates and realleges Paragraphs 1, 2, 4 through 6, 8, 39, and 44 through 49, as if fully set forth herein.

52. COBRA requires that an "employer" notify its "plan administrator" of the occurrence of a "qualifying event" within thirty (30) days of its occurrence. See 29 U.S.C. § 1166(a)(2).

53. In this case, Defendant, the “employer,” failed to notify its third-party administrator, and Plaintiff’s constructive discharge on January 26, 2026, was a “qualifying event” under COBRA, as hereinabove described.

54. Therefore, pursuant to COBRA, Defendant was responsible for notifying the third-party administrator of the subject qualifying event no later than March 11, 2026.

55. In this case, there is no evidence that Defendant complied with that requirement by notifying the plan administrator of Plaintiff’s qualifying event within the required time period.

56. Upon information and belief, Defendant never informed the plan administrator of the qualifying event.

57. As a result, Plaintiff was denied his right to elect continuing health care coverage under the Plan.

58. As a direct and proximate result, Plaintiff has suffered damages, including but not limited to, the expenses incurred for medical bills and replacement health insurance, emotional distress damages, and attorney’s fees and the costs of this litigation.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court, pursuant to 29 U.S.C. § 1132(c), award any and all relief that it deems just and proper, including, but not limited to:

a) Reimbursement of all medical expenses incurred as a result of Defendant's violation of the law;

b) $110.00 per day, along with the damages to be assessed against the Defendant;

c) Prejudgment interest for failing to give notice to elect continuing coverage;

d) Attorney's fees and the costs of litigation, including the costs incurred by the Plaintiff for any expert witness fees;

e) Any other equitable relief that this Court deems just and proper.

**COUNT II**
**FLORIDA'S PRIVATE WHISTLEBLOWER ACT**
**UNLAWFUL RETALIATION**

59. Plaintiff reincorporates and re-alleges Paragraphs 1 through 42, and 50 of the Complaint, above, as if set forth fully herein, and further alleges as follows:

60. On January 26, 2026, Defendant illegally constructively discharged Plaintiff from his employment in violation of Fla. Stat. § 448.102.

61. Plaintiff was retaliated against and constructively discharged in violation of Section 448.102, Florida Statutes, for objecting to illegal activity, or

what he reasonably believed to be illegal activity, being conducted by Defendant, and/or for refusing to participate in same.

62. Plaintiff objected to and refused to participate in a violation of a law, rule, or regulation, or what he reasonably believed to be a violation of a law, rule, or regulation, and was forced to resign as a direct result of same, which constitutes a violation of the FWA.

63. As a result of Defendant's intentional, willful and unlawful actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost benefits, lost employment status, as well as humiliation, pain and suffering, and other monetary and non-monetary losses.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay back pay, and emotional distress damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

**COUNT III**
**VIOLATION OF WCRS**

64. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 6, 8, 9, 13 through 17, 19 through 40, 42, and 50, above.

65. On September 26, 2025, Defendant constructively discharged Plaintiff from his employment in violation of the WCRS.

66. Plaintiff was retaliated and constructively discharged in violation of the WCRS for pursuing or attempting to pursue his legal rights to workers' compensation benefits.

67. As a result of Defendant's intentional, willful and unlawful actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost benefits, lost employment status, as well as humiliation, pain and suffering and other monetary and non-monetary losses.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, and emotional distress damages, declaratory and injunctive relief and such other relief deemed proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 16th day of September 2026.

Respectfully Submitted,

***/s/ Nicholas Vimo***

Nicholas Vimo
Florida Bar No. 1029436
RICHARD CELLER LEGAL, P.A.
7951 SW 6th St, Suite 316
Plantation, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-Mail: nicholas@floridaovertimelawyer.com
*Counsel for Plaintiff*